RECORD NO. 15-1063

In The

# United States Court of Appeals

### For The Fourth Circuit

## SEVERN PEANUT CO., INC.; MEHERRIN AGRICULTURE & CHEMICAL CO.; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

*Plaintiffs – Appellants*,

**v.**

## INDUSTRIAL FUMIGANT CO.; ROLLINS INC.,

*Defendants – Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT ELIZABETH CITY

———————————

**BRIEF OF APPELLEES**

———————————

Steven B. Epstein
Andrew H. Erteschik
POYNER SPRUILL LLP
Post Office Box 1801
Raleigh, North Carolina 27602
(919) 783-6400

William J. Conroy
CAMPBELL TRIAL LAWYERS
1205 Westlakes Drive, Suite 330
Berwyn, Pennsylvania 19312
(610) 964-6380

*Counsel for Appellees*

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1063__        Caption: __SEVERN PEANUT CO., INC. V. INDUSTRIAL FUMIGANT CO.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__INDUSTRIAL FUMIGANT CO.__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
       Rollins, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☑ YES ☐ NO
      If yes, identify all such owners:
       Rollins, Inc.

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
        If yes, identify entity and nature of interest:

 N/A

5.      Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

 N/A

6.      Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
        If yes, identify any trustee and the members of any creditors' committee:

 N/A

Signature: __s/ Steven B. Epstein_____    Date: _____1/28/2015_____

Counsel for: __Defendant-Appellees_____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____1/28/2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

 See attached.

 __s/ Steven B. Epstein_____          _____1/28/2015_____
        (signature)                                    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1063__    Caption: __SEVERN PEANUT CO., INC. V. INDUSTRIAL FUMIGANT CO.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__ROLLINS, INC.__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO

2.    Does party/amicus have any parent corporations?              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
       N/A

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                      ☐ YES ☑ NO
      If yes, identify all such owners:
       N/A

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☐YES ☑NO
If yes, identify entity and nature of interest:

N/A

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

N/A

6.      Does this case arise out of a bankruptcy proceeding?      ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

N/A

Signature: s/ Steven B. Epstein                    Date:     1/28/2015

Counsel for: Defendant-Appellees

## CERTIFICATE OF SERVICE
**************************

I certify that on     7/16/2015     the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

See attached.

s/ Steven B. Epstein                         1/28/2015
       (signature)                              (date)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF THE ISSUES ........................................................ 1

INTRODUCTION ............................................................................ 1

STATEMENT OF FACTS ................................................................ 3

SUMMARY OF ARGUMENT .......................................................... 5

ARGUMENT .................................................................................. 6

    I.     THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF CONTRACT CLAIM BECAUSE THE CONTRACT'S CONSEQUENTIAL DAMAGES EXCLUSION BARRED RECOVERY OF PLAINTIFFS' DAMAGES .................................... 6

        A.    All Provisions of the Contract Must Be Given Effect ............... 6

        B.    The Contract's Consequential Damages Exclusion Excluded the Very Damages Plaintiffs Seek ............................ 7

        C.    The Contract's Consequential Damages Exclusion is Valid and Enforceable ............................................................. 11

    II.    SUMMARY JUDGMENT ON PLAINTIFFS' NEGLIGENCE CLAIMS SHOULD BE AFFIRMED ON THE ALTERNATE GROUND THAT THE DAMAGES SOUGHT BY PLAINTIFFS WERE PRECLUDED BY THE CONTRACT'S CONSEQUENTIAL DAMAGES EXCLUSION ............................... 17

III.    SUMMARY JUDGMENT ON PLAINTIFFS' NEGLIGENCE CLAIMS SHOULD BE AFFIRMED ON THE ALTERNATE GROUND THAT THESE CLAIMS IMPROPERLY SEEK DAMAGES ARISING FROM DEFENDANTS' CONTRACTUAL PERFORMANCE ..................................................19

   A.    The Economic Loss Doctrine Precludes a Claim for Negligence Where the Defendant's Obligations are Governed by Contract ..............................................................19

   B.    Because IFC's Obligations Were Governed by the Contract, Plaintiffs are Precluded From Suing IFC for Negligence ....................................................................23

   C.    Because the Peanuts and Storage Dome Constituted Property Which was the Subject of the Contract, Their Destruction Constitutes Economic Loss, Rather than Compensable Property Damage.................................26

   D.    Plaintiffs' Negligence Per Se Claim is Also Precluded by the Economic Loss Doctrine ....................................31

CONCLUSION .................................................................................31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*2000 Watermark Ass'n, Inc. v. Celotex Corp.*,
    784 F.2d 1183 (4th Cir. 1986) ......................................................24

*Alston v. Monk*,
    92 N.C. App. 59, 373 S.E.2d 463 (1988) .................................12, 13

*Binder v. Bank of America Corp.*,
    2010 U.S. Dist. LEXIS 124208 (N.D. Tex. Nov. 22, 2010) .........31

*Blaylock Grading Co. v. Smith*,
    189 N.C. App. 508, 658 S.E.2d 680 (2008) ......................14, 15, 16

*Blum v. Bacon*,
    457 U.S. 132 (1982)......................................................................3

*Bob Timberlake Collection, Inc. v. Edwards*,
    176 N.C. App. 33, 626 S.E.2d 315 (2006) ...................................20

*Branch Banking & Trust Co. v. Thompson*,
    107 N.C. App. 53, 418 S.E.2d 694 (1992) ...................................20

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ......................................................20

*Cemex, Inc. v. LMS Contr., Inc.*,
    2009 U.S. Dist. LEXIS 89052 (W.D. Ky. Sept. 28, 2009)...........31

*Citizens Ins. Co. v. Proctor & Schwartz, Inc.*,
    802 F. Supp. 133 (W.D. Mich. 1992), *overruled on other grounds by*,
    *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236 (6th Cir. 1994)....8, 9, 10, 18

*Combustion Sys. Servs., Inc. v. Schuylkill Energy Res., Inc.*,
    1993 U.S. Dist. LEXIS 16374 (E.D. Pa. Nov. 19, 1993) ..............10

*Crop Prod. Servs., Inc. v. Ormond*,
   2012 U.S. Dist. LEXIS 5499 (E.D.N.C. Jan. 18, 2012) ................................23

*Dur v. Western Branch Diesel, Inc.*,
   2007 U.S. App. LEXIS 16237 (4th Cir. July 9, 2007) ...................................30

*Ellis v. La.-Pac. Corp.*,
   699 F.3d 778 (4th Cir. 2012) ...................................................................3, 24

*Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*,
   2011 U.S. Dist. LEXIS 34789 (E.D.N.C. Mar. 31, 2011), *aff'd*,
   2012 U.S. App. LEXIS 8643 (4th Cir. Apr. 27, 2012)............................13, 15

*Firemen's Mut. Ins. Co. v. High Point Sprinkler Co.*,
   266 N.C. 134, 146 S.E.2d 53 (1966) .....................................................29, 30

*Ford v. All-Dry of the Carolinas, Inc.*,
   2011 N.C. App. LEXIS 713 (N.C. Ct. App. Apr. 19, 2011) ........................22

*Fortson v. McClellan*,
   131 N.C. App. 635, 508 S.E.2d 549 (1998) ....................................12, 13, 14

*Gas House, Inc. v. Southern Bell Tel. & Tel. Co.*,
   289 N.C. 175, 221 S.E.2d 499 (1976), *overruled on other grounds by*,
   *State ex rel. Utils. Comm'n v. Southern Bell Tel & Tel. Co.*,
   307 N.C. 541, 299 S.E.2d 763 (1983) ................................................12, 14, 15

*Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*,
   351 N.C. 293, 524 S.E.2d 558 (2000) ............................................................6

*Gates Rubber Co. v. USM Corp.*,
   508 F.2d 603 (7th Cir. 1975) ........................................................................18

*Gore v. George J. Ball, Inc.*,
   279 N.C. 192, 182 S.E.2d 389 (1971) ..........................................................16

*Hall v. Sinclair Refining Co.*,
   242 N.C. 707, 89 S.E.2d 396 (1955) ............................................................12

iv

*In re Air Bag Products Liability Litigation*,
    7 F. Supp. 2d 792 (E.D. La. 1998)...................................................31

*Island Creek Coal Co. v. Lake Shore, Inc.*,
    832 F.2d 274 (4th Cir. 1987) ...................................................6, 18

*Kaleel Builders, Inc. v. Ashby*,
    161 N.C. App. 34, 587 S.E.2d 470 (2003) ...................................22

*Kelly v. Georgia-Pacific LLC*,
    671 F. Supp. 2d 785 (E.D.N.C. 2009) ..........................................24

*Land v. Tall House Building Co.*,
    165 N.C. App. 880, 602 S.E.2d 1 (2004) ..........................21, 22, 30

*LeFebvre Intergraphics, Inc. v. Sanden Machine Ltd.*,
    946 F. Supp. 1358 (N.D. Ill. 1996)...............................................18

*Lord v. Customized Consulting Specialty, Inc.*,
    182 N.C. App. 635, 643 S.E.2d 28 (2007) ...................20, 24, 27, 30

*LRP Hotels of Carolina, LLC v. Westfield Ins. Co.*,
    2014 U.S. Dist. LEXIS 154909 (E.D.N.C. Oct. 31, 2014) ...........26

*Martin v. Sheffer*,
    102 N.C. App. 802, 403 S.E.2d 555 (1991) ..................................13

*Mason v. Yontz*,
    102 N.C. App. 817, 403 S.E.2d 536 (1991) ........................... 22-23

*McManus v. GMRI, Inc.*,
    2012 U.S. Dist. LEXIS 92094 (W.D.N.C. July 3, 2012) ..............30

*McNally Wellman Co. v. New York State Elec. & Gas Corp.*,
    63 F.3d 1188 (2d Cir. 1995) ....................................................9, 10

*Merritt v. Knox*,
    94 N.C. App. 340, 380 S.E.2d 160 (1989) ...................................16

*Moore v. Coachmen Indus., Inc.*,
129 N.C. App. 389, 499 S.E.2d 772 (1998) ............................................*passim*

*Moses H. Cone Mem. Hosp. Oper. Corp. v. Springfield Serv. Corp.*,
2014 U.S. Dist. LEXIS 98140 (M.D.N.C. July 18, 2014)...........................16

*N.C. Baptist Hosp. v. Novant Health, Inc.*,
195 N.C. App. 721, 673 S.E.2d 794 (2009) ...................................................16

*N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*,
294 N.C. 73, 240 S.E.2d 345 (1978) ......................................................*passim*

*Nudelman v. J.A. Booe Bldg. Contr., Inc.*,
2003 N.C. App. LEXIS 509 (N.C. Ct. App. Mar. 4, 2003)..........................31

*Palmetto Linen Serv., Inc. v. U.N.X., Inc.*,
205 F.3d 126 (4th Cir. 2000) .........................................................................25

*Reynolds v. Am. Nat'l Red Cross*,
701 F.3d 143 (4th Cir. 2012) ...........................................................................3

*Riggs v. Orkin, Inc.*,
2011 U.S. Dist. LEXIS 62938 (E.D.N.C. June 13, 2011) ............................23

*Rolls v. Rolls*,
2010 N.C. App. LEXIS 2388 (N.C. Ct. App. Dec. 21, 2010).......................15

*Roneker v. Kenworth Truck Co.*,
977 F. Supp. 237 (W.D.N.Y. 1997)............................................................. 9-10

*Southeastern Shelter Corp. v. BTU, Inc.*,
154 N.C. App. 321, 572 S.E.2d 200 (2002) ..................................................20

*Spencer v. DHI Mortg. Co., Ltd.*,
642 F. Supp. 2d 1153 (E.D. Cal. 2009) ........................................................31

*Spillman v. American Homes of Mocksville, Inc.*,
108 N.C. App. 63, 422 S.E.2d 740 (1992) ....................................................20

vi

*Stan D. Bowles Distr. Co. v. Pabst Brewing Co.*,
   69 N.C. App. 341, 317 S.E.2d 684 (1984) ............................................7, 8, 10

*State v. Philip Morris USA Inc.*,
   359 N.C. 763, 618 S.E.2d 219 (2005) ............................................................6

*Strawbridge v. Sugar Mountain Resort, Inc.*,
   320 F. Supp. 2d 425 (W.D.N.C. 2004)............................................................12

*Sylva Shops, Ltd. v. Hibbard*,
   175 N.C. App. 423, 623 S.E.2d 785 (2006) ..................................................16

*Tiffany v. Forbes Custom Boats, Inc.*,
   1992 U.S. App. LEXIS 6268 (4th Cir. Apr. 6, 1992)....................................13

*United States v. Johnson Controls, Inc.*,
   713 F.2d 1541 (Fed. Cir. 1983) ......................................................................6

*Vigus v. Milton A. Latta & Sons Dairy Farms, Inc.*,
   2009 N.C. App. LEXIS 830 (N.C. Ct. App. May 19, 2009)........................27

*Warfield v. Hicks*,
   91 N.C. App. 1, 370 S.E.2d 689 (1988) ..................................................21, 22

*Weaver v. Saint Joseph of the Pines, Inc.*,
   187 N.C. App. 198, 652 S.E.2d 701 (2007) ..................................................15

*Westmoreland v. High Point HealthCare Inc.*,
   218 N.C. App. 76, 721 S.E.2d 712 (2012) ....................................................15

*Woods v. Nationwide Mut. Ins. Co.*,
   295 N.C. 500, 246 S.E.2d 773 (1978) ............................................................6

## **STATUTE**

N.C. Gen. Stat. § 25-2-719(c) ................................................................14

## STATEMENT OF THE ISSUES

I.    Did the district court properly grant summary judgment in Defendants' favor on Plaintiffs' breach of contract claim because the contract's consequential damages exclusion barred recovery of Plaintiffs' damages?

II.   Should this Court affirm the district court's grant of summary judgment in Defendants' favor on Plaintiffs' negligence claims on the alternate ground that the damages sought by Plaintiffs were precluded by the contract's consequential damages exclusion?

III.  Should this Court affirm the district court's grant of summary judgment in Defendants' favor on Plaintiffs' negligence claims on the alternate ground that these claims improperly seek damages arising from Defendants' contractual performance?

## INTRODUCTION

This case arrives at the Court in a somewhat unusual procedural posture. Plaintiffs brought breach of contract claims and negligence claims against Defendants. The district court granted summary judgment in Defendants' favor on Plaintiffs' breach of contract claim for the reasons argued by Defendants. However, the district court also granted summary judgment in Defendants' favor on Plaintiffs' negligence claims for reasons that Defendants conceded could not justify summary judgment in their favor.

As Plaintiffs correctly note, Defendants did not move for summary judgment on Plaintiffs' negligence claims based on the defense of contributory negligence. On the contrary, Defendants conceded before the district court that their contributory negligence defense presented genuine issues of material fact precluding summary judgment. The district court disagreed with Defendants (and, of course, Plaintiffs) and entered summary judgment in Defendants' favor on Plaintiffs' negligence claims on contributory negligence grounds. Defendants concede that the district court erred in doing so.

Nevertheless, the district court ultimately reached the right result. Instead of erroneously granting summary judgment on Plaintiffs' negligence claims on contributory negligence grounds, the district court should have granted summary judgment on Plaintiffs' negligence claims on the following alternate grounds:

- For the same reason the contract's consequential damages exclusion precluded Plaintiffs from asserting contract claims for their consequential losses, it similarly precluded Plaintiffs from seeking to recover for those losses under the banner of "negligence."

- The economic loss doctrine precluded Plaintiffs from seeking in tort damages they are barred from recovering in contract.

For these reasons, Defendants ask this Court to: (1) affirm the district court's entry of summary judgment in Defendants' favor on Plaintiffs' breach of

contract claims; and (2) affirm, on alternate grounds, the district court's entry of summary judgment in Defendants' favor on Plaintiffs' negligence claims.  *See, e.g., Blum v. Bacon*, 457 U.S. 132, 137 n.5 (1982) (appellate court may affirm judgment on alternate ground than the one adopted by the district court); *Ellis v. La.-Pac. Corp.*, 699 F.3d 778, 786-87 (4th Cir. 2012) ("[t]his court is entitled to affirm the [district] court's judgment on alternate grounds, if such grounds are apparent from the record") (citation omitted).[1]

## STATEMENT OF FACTS

The pesticide application at issue in this case was the subject of a two-page "Pesticide Application Agreement" between Plaintiff Severn Peanut Company ("SPC")[2] and Defendant Industrial Fumigant Company ("IFC")[3] (hereinafter the "Contract" or "Pesticide Application Agreement").  (J.A. 46, Amd. Compl. Ex. A). It was signed by SPC's Vice President of Operations, R.P. Watson.  (J.A. 1040-42,

---

[1]    This Court has repeatedly explained that an appellee should raise alternate grounds for affirming the district court's judgment in its responsive brief, not through a cross-appeal.  "A cross-appeal is unnecessary where an appellee 'seeks nothing more than to preserve a judgment in its favor' by "seek[ing] affirmance of the district court's judgment on an alternate ground."  *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 155-56 (4th Cir. 2012).

[2]    SPC's revenues are in excess of $100 million annually; it acquires between 150-200 million pounds of peanuts each year.  (J.A. 775, 781, Watson Dep. Vol. I). Plaintiff Meherrin Agricultural & Chemical Co. is SPC's parent company.  (J.A. 775).

[3]    IFC is a wholly owned subsidiary of Defendant Rollins, Inc.  (Ponton Aff. ¶¶ 3, 5 (D.E. #85-4)).

Watson Dep., Vol. II).  The Contract was "for the treatment of commodities and/or space by IFC" under the specified terms and conditions.  (J.A. 46).  It provided that IFC was to apply aluminum phosphide tablets to the peanut storage dome in order to treat the peanuts for two target pests.  (*Id.* § 4).

Under the Contract, IFC was responsible for "sealing and preparing the building/area for treatment" and for "releasing the pesticide and aeration of the treated areas."  (*Id.* §§ 6, 8(g)).  IFC agreed to use "reasonable and practical efforts to apply the pesticides . . . in a manner consistent with instructions, procedures, directions, and precautions set forth in the labeling of the pesticide as required by the EPA."  (*Id.* § 7(a)).  For each treatment of the dome, SPC agreed to pay IFC $8,604.00.  (*Id.* § 8(h)(I)).

The Contract expressly limited IFC's potential liability:

> IFC shall in no event be liable for consequential damages . . . resulting from the performances of its services and use of any products pursuant hereto.

(*Id.* § 7(b)).

> Charges for services provided under this Agreement are based solely upon the value of the services provided and are not related to the value of [SPC's] premises or the contents therein.  The amounts payable by [SPC] are not sufficient to warrant IFC assuming any risk of incidental or consequential damages such as [SPC's] property, product, equipment, downtime, or loss of business.

(*Id.* § 8(h)(II)).

4

As a result of the August 2009 fire, SPC's storage dome, and the 21 million pounds of peanuts stored therein, were destroyed.  Under its property insurance policy, Plaintiff Travelers Property Casualty Company of America ("Travelers") paid its insured, SPC, approximately $7 million for the loss of the peanuts; approximately $2.3 million for the loss of the storage dome; approximately $2.6 million for debris removal; approximately $5.1 million for fire suppression; and approximately $2.2 million for business income losses.  (J.A. 405-27, 471-86, Nata Dep. & Exs. 135-37).

## SUMMARY OF ARGUMENT

As the district court held in granting Defendants' summary judgment motion, Plaintiffs' breach of contract claim fails because the damages they seek are expressly excluded by the consequential damages exclusion contained in the Contract.  Plaintiffs' negligence claims fail (1) for precisely the same reason and (2) because they are barred by North Carolina's economic loss doctrine.  The Court may affirm the district court's judgment on either of those bases.

## ARGUMENT

**I.  THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF CONTRACT CLAIM BECAUSE THE CONTRACT'S CONSEQUENTIAL DAMAGES EXCLUSION BARRED RECOVERY OF PLAINTIFFS' DAMAGES.**

### A.    All Provisions of the Contract Must Be Given Effect.

Contract interpretation "requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." *State v. Philip Morris USA Inc.*, 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005). "Intent is derived not from a particular contractual term but from the contract as a whole." *Id.* "'The various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect[.]'" *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299-300, 524 S.E.2d 558, 563 (2000) (quoting *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978)).  It is the "universal rule of contract law that, in construing language in a contract, 'an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless.'"  *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 277 (4th Cir. 1987) (quoting *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed. Cir. 1983)).

Applying these principles to the Contract, this Court must give meaning to section 7(b)'s exclusion of consequential damages as well as section 8(h)(II)'s

6

listing of examples of such excluded damages, including SPC's "property, product, equipment, downtime, or loss of business."  (J.A. 47 § 8(h)(II)).  Construing those provisions harmoniously, and giving effect to each and every word, the Contract precludes IFC from being held liable for any damages to SPC's "property, product, equipment, downtime, or loss of business" or related consequential damages.  (*Id.*)

### B.    The Contract's Consequential Damages Exclusion Excluded the Very Damages Plaintiffs Seek.

The North Carolina Court of Appeals has held that where parties specify in their contract the types of consequential damages that are excluded from recovery, "those consequential damages are excluded."  *Stan D. Bowles Distr. Co. v. Pabst Brewing Co.*, 69 N.C. App. 341, 351, 317 S.E.2d 684, 690 (1984).  In *Bowles*, the parties' contract provided that "[u]nder no circumstances shall Pabst be liable for any loss of profits by distributor or for any part of distributor's sales promotion, organization, business investment, operating or other expenses . . . ."  *Id.* at 350, 317 S.E.2d at 690.  In enforcing this provision, the Court of Appeals held that "[t]he paragraph clearly does exclude loss of profits, and the [trial] court thus was correct in not awarding the $100,000 it found plaintiff had suffered in lost profits." *Id.* at 351, 317 S.E.2d at 690.

Similarly, in *Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 499 S.E.2d 772 (1998), a recreational vehicle's limited warranty provided that "[w]e shall not be liable for incidental or consequential damages, ***such as*** your expenses

for transportation, lodging, ***loss or damage to your personal property***, loss of use of your product, inconvenience, or loss of income."  129 N.C. App. at 398, 499 S.E.2d at 778 (emphasis added).  The fire that destroyed the plaintiffs' RV also destroyed their satellite dish, receiver box, and various other personal property.  *Id.* at 392, 499 S.E.2d at 774.  Just as in *Bowles*, the Court of Appeals relied on the listing of specified types of excluded damages to determine whether the plaintiffs' personal property losses were recoverable:  "the Limited Warranty prevents plaintiffs from recovering any incidental or consequential damages, 'including loss or damage to their personal property.'"  *Id.* at 402, 499 S.E.2d at 780.  Thus, it held that the plaintiffs could not recover for those losses.  *Id.*

As in *Bowles* and *Moore*, courts throughout the country recognize that contracting parties may define for themselves the specific types of consequential damages to be excluded from recovery and routinely enforce provisions similar to section 8(h)(II) of the Pesticide Application Agreement.  For instance, in *Citizens Ins. Co. v. Proctor & Schwartz, Inc.*, 802 F. Supp. 133 (W.D. Mich. 1992), *overruled on other grounds by Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 242 (6th Cir. 1994), the plaintiff's insured entered into a sales agreement to purchase a peanut roaster and conveyor cleaner manufactured by the defendant. Thereafter, the roaster caught fire and caused substantial damage to itself, the cleaner, as well as other property owned by the plaintiff's insured.  *Id.* at 136.

The sales agreement for the roaster and cleaner contained a provision stating that the defendant "shall not be liable for proximate incidental, consequential or other damages, including but not limited to erecting expenses and damages for loss of profits or production or injury to . . . property." *Id.* at 142. The district court had little difficulty concluding, based on this language, that "all of the claimed losses arising out of damage to property other than the peanut roaster and conveyor cleaner [which were barred by the economic loss doctrine] was effectively excluded by this provision." *Id.* at 143. Though the plaintiff argued that application of this exclusion was unconscionable, the district court disagreed, noting that the clause was "a conspicuous and unambiguous part of a sales transaction between two commercial entities." *Id.* at 145.

In *McNally Wellman Co. v. New York State Elec. & Gas Corp.*, 63 F.3d 1188 (2d Cir. 1995), the Second Circuit noted that "[w]hile ordinarily the precise demarcation between direct damages and incidental or consequential damages is an issue of fact," that is not so where "the parties themselves defined the scope of excluded damages in the contract." *Id.* at 1195. Based on language in the contract providing that the "'special, incidental, indirect, or consequential damages'" excluded by the contract "'shall be effective without regard to [McNally's] performance or failure or *delay* of performance,'" the court concluded that delay damages were excluded. *Id.* (emphasis in original); *see, e.g., Roneker v. Kenworth*

9

*Truck Co.*, 977 F. Supp. 237, 239-40 (W.D.N.Y. 1997) (where parties themselves define the scope of excluded consequential damages, the court may find as a matter of law that the damages sought by the plaintiff constitute excluded consequential damages); *Combustion Sys. Servs., Inc. v. Schuylkill Energy Res., Inc.*, 1993 U.S. Dist. LEXIS 16374, *8 (E.D. Pa. Nov. 19, 1993) ("where parties define for themselves what constitutes consequential damages courts generally will not interfere").

The listing of excluded damages contained in Section 8(h)(II) of the Pesticide Application Agreement is no different from the listings of excluded damages on which the North Carolina Court of Appeals relied in *Bowles* and *Moore* and on which the federal courts relied in *Proctor & Schwartz* and *McNally Wellman*. Because SPC agreed in section 8(h)(II) that IFC would not be liable for damages to its property, product, equipment, downtime, or loss of business, "the Court need not consider whether such damages would ordinarily be considered direct or consequential. Here, the parties have agreed that they are excluded consequential damages." (J.A. 1396, Order on Defs.' Mot. for Summ. Jdgmt.). Because SPC is seeking to recover for the loss of its peanuts and its storage dome, and the related consequential damages associated with debris removal, fire suppression, and business losses, the Court should conclude, as did the district court, that Defendants are entitled to judgment as a matter of law that those

10

damages are excluded by the contract.  Allowing Plaintiffs to pursue such damages would rewrite the Contract and render section 8(h)(II) utterly meaningless, in contravention of universally recognized principles of contract interpretation.

Even Plaintiffs agree that the Pesticide Application Agreement deems the destruction of SPC's peanuts and storage dome to be consequential losses, having conceded before the district court that "***the agreement drafted by Defendants defines damage to the Dome and peanuts as incidental and consequential***."  (DE #17 p. 10) (emphasis added).  Indeed, Plaintiffs did not contend a single time before the district court that damages to the dome and peanuts, or the costs of fire suppression, debris removal, or business losses, could or should be interpreted as direct, rather than consequential, damages.

### C. The Contract's Consequential Damages Exclusion is Valid and Enforceable.

North Carolina courts will not interfere with the contractual allocation of risk made by commercial parties, even though that allocation may prove in retrospect to be a bad bargain:

> People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain.  Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side.

*Gas House, Inc. v. Southern Bell Tel. & Tel. Co.*, 289 N.C. 175, 182, 221 S.E.2d 499, 504 (1976), *overruled on other grounds by State ex rel. Utils. Comm'n v. Southern Bell Tel & Tel. Co.*, 307 N.C. 541, 299 S.E.2d 763 (1983).

Plaintiffs' argument that the Contract's consequential damages exclusion is void as against public policy is based on a fundamental misunderstanding of North Carolina law as to what constitutes an "exculpatory clause." Exculpatory clauses typically require an individual to ***release*** or absolve another party from ***any and all liability*** arising from its own conduct – including for personal injuries or death. Patrons and participants involved in dangerous sporting events and recreational activities are often required to execute such releases. *See, e.g., Strawbridge v. Sugar Mountain Resort, Inc.*, 320 F. Supp. 2d 425, 432-34 (W.D.N.C. 2004) (exculpatory provision on ski lift ticket void as against public policy); *Fortson v. McClellan*, 131 N.C. App. 635, 638-39, 508 S.E.2d 549, 552-54 (1998) (pre-participation waiver of motorcycle instructors' negligence void as against public policy). Courts "do not favor releases from one's own negligence . . . [and] have stated 'that a party cannot protect himself by contract[ing] against liability for negligence in the performance of a duty of public service, or where a public duty is owed, or public interest is involved.'" *Alston v. Monk*, 92 N.C. App. 59, 63-64, 373 S.E.2d 463, 466 (1988) (quoting *Hall v. Sinclair Refining Co.*, 242 N.C. 707, 710, 89 S.E.2d 396, 398 (1955)); *see also id.* at 64, 373 S.E.2d at 467 ("Institute

and its employees may not contract with their customers in a manner that would absolve themselves from their duty to use reasonable care."). Thus, exculpatory clauses are not enforceable if the party to be released from all liability has a duty to the public at large. *Id.*

Unlike exculpatory clauses, provisions which merely limit liability or exclude certain types of damages do not require one contracting party to ***release*** or absolve the other from ***any and all liability*** and never release a party from liability for personal injury or death. Thus, whereas exculpatory clauses are disfavored, liability limitations and damages exclusions contained in commercial contracts are not. *See, e.g., Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, 2011 U.S. Dist. LEXIS 34789, *23 (E.D.N.C. Mar. 31, 2011) ("'[c]ourts rarely find limitation clauses in transactions between experienced businessmen unconscionable'") (citation omitted), *aff'd*, 2012 U.S. App. LEXIS 8643 (4th Cir. Apr. 27, 2012); *Tiffany v. Forbes Custom Boats, Inc.*, 1992 U.S. App. LEXIS 6268, *33-34 (4th Cir. Apr. 6, 1992) ("'it is rare that a limitation of remedy will be held unconscionable in a commercial setting'") (citation omitted); *Martin v. Sheffer*, 102 N.C. App. 802, 805, 403 S.E.2d 555, 557 (1991) (same). The public duty analysis courts apply to clauses "wholly exempting the party from all liability" does not apply to provisions merely "limiting liability[.]" *Fortson*, 131 N.C. App. at 639, 508 S.E.2d at 553. As stated by the Court of Appeals in *Fortson*: "The

13

present case involves a complete release from liability, rather than an indemnification or reasonable limitation on liability, and so the release must be strictly construed." *Id.* Strict construction is not, however, required for clauses which merely limit liability or exclude certain types of damages.

The consequential damages exclusion contained in section 7(b) of the Pesticide Application Agreement merely limits IFC's liability, rather than exculpating IFC from any and all liability. It is no more a disfavored exculpatory clause than consequential damages exclusions expressly authorized by the Uniform Commercial Code regarding the sale of goods. *See* N.C. Gen. Stat. § 25-2-719(c) ("[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."). Consequently, no matter how heavily regulated the pesticide industry may be, the strict public duty analysis courts apply to exculpatory clauses has no bearing on this case. Rather, the enforceability of the Contract's consequential damages exclusion should be evaluated under the test articulated in *Blaylock Grading Co. v. Smith*, 189 N.C. App. 508, 658 S.E.2d 680 (2008).

The *Blaylock* opinion was grounded on the Supreme Court's analysis in *Gas House*, which held:

> "It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of

14

injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability."[4]

*Blaylock*, 189 N.C. App. at 511, 658 S.E.2d at 682 (quoting *Gas House*, 289 N.C. at 182, 221 S.E.2d at 504).  No decent, fair-minded person would view application of the Contract's consequential damages exclusion with a "profound sense of injustice" because the Contract made clear that the amount being charged for IFC's services was "not related to the value of Client's premises or the contents therein" and was "not sufficient to warrant IFC assuming any risk of incidental or consequential damages such as Client's property, product, equipment, downtime, or loss of business."[5]  (J.A. 47 § 8(h)(II)).  Plaintiffs received exactly what they bargained for, no more and no less.  That they now, in hindsight, wish they had bargained for greater protection for consequential losses is no basis for the Court to intercede.  *See Rolls v. Rolls*, 2010 N.C. App. LEXIS 2388, *8-9 (N.C. Ct. App. Dec. 21, 2010) ("[d]efendant is not permitted to now argue that the provisions in

---

[4]    Unconscionability relates to contract terms that are "oppressive," *Farrar*, 2011 U.S. Dist. LEXIS 34789, at *23, and is analyzed as of the time the contract is entered, not when the plaintiff sustains damage.  *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 212, 652 S.E.2d 701, 712 (2007).  It would be a "very rare case" for a North Carolina court to find a provision contained in an arms-length, commercial agreement unconscionable.  *Westmoreland v. High Point HealthCare Inc.*, 218 N.C. App. 76, 91, 721 S.E.2d 712, 723 (2012).

[5]    That Plaintiffs were insured for the consequential losses at issue further underscores that application of the consequential damages exclusion is not profoundly unjust.  (*See* SPC Fin. Discl. Stmt., D.E. #2, p. 2).

15

the agreement should be disregarded because he believes he received a bad bargain") (citing *Blaylock*, 189 N.C. App. at 511, 658 S.E.2d at 682).

Plaintiffs fail to cite a single North Carolina case in which a consequential damages exclusion contained in a commercial, arms-length agreement was held to be unconscionable.[6]  North Carolina courts have not hesitated to enforce these types of clauses in commercial contracts.  *See, e.g., Moses H. Cone Mem. Hosp. Oper. Corp. v. Springfield Serv. Corp.*, 2014 U.S. Dist. LEXIS 98140, *14-15 (M.D.N.C. July 18, 2014) (applying *Blaylock* to enforce consequential damages exclusion contained in arms-length commercial contract); *N.C. Baptist Hosp. v. Novant Health, Inc.*, 195 N.C. App. 721, 725, 673 S.E.2d 794, 797-98 (2009) ("[o]ur courts are loath to intervene in contractual relationships based upon public policy considerations when the parties 'are sophisticated, professional parties who conducted business at arms' length, and the 'result' of the contract does not elicit a 'profound sense of injustice'") (quoting *Blaylock*, 189 N.C. App. at 512, 658 S.E.2d at 683); *Sylva Shops, Ltd. v. Hibbard*, 175 N.C. App. 423, 427, 623 S.E.2d 785, 789 (2006) ("when parties contract at arm's length, the provisions in the

---

[6]    Plaintiffs' reliance on *Gore v. George J. Ball, Inc.*, 279 N.C. 192, 182 S.E.2d 389 (1971) is misplaced.  There the court held only that the damages limitation contained in a limited warranty for the sale of seed could not be enforced because it violated the North Carolina Seed Law.  *Id.* at 208, 182 S.E.2d at 398; *see Merritt v. Knox*, 94 N.C. App. 340, 342, 380 S.E.2d 160, 162 (1989) (citing *Gore* for proposition that "contract provisions in violation of a statute are contrary to public policy and will not be enforced.").

16

parties' contract are the law of their case, and courts are without power to revise the contract") (citation omitted).  Similarly, this Court should not hesitate to enforce the consequential damages exclusion contained in the parties' Contract here.  Summary judgment was therefore appropriately granted on Plaintiffs' breach of contract claim.

## II. SUMMARY JUDGMENT ON PLAINTIFFS' NEGLIGENCE CLAIMS SHOULD BE AFFIRMED ON THE ALTERNATE GROUND THAT THE DAMAGES SOUGHT BY PLAINTIFFS WERE PRECLUDED BY THE CONTRACT'S CONSEQUENTIAL DAMAGES EXCLUSION.

The Contract's consequential damages exclusion also precluded Plaintiffs from recovering consequential damages in negligence.  That conclusion is compelled by the North Carolina Court of Appeals' analysis in *Moore*, which involved the destruction of the plaintiffs' recreational vehicle.  The court in *Moore* began its analysis by noting that the plaintiffs' claim for breach of warranty was time-barred.  129 N.C. App. at 401, 499 S.E.2d at 780.  It then turned its attention to the plaintiffs' negligence claims and concluded that the economic loss doctrine precluded them from recovering in negligence for the destruction of the recreational vehicle itself.  *Id.* at 402, 499 S.E.2d at 780.

That still left open the question of whether the plaintiffs could recover in negligence for the destruction of their personal property – their satellite dish, receiver, and other personal property – which was not barred by the economic loss

doctrine because it was damage to "other property." *Id.* at 392, 499 S.E.2d at 774. On that question, the court applied the limited warranty's consequential damages exclusion:

> Further, the Limited Warranty prevents plaintiffs from recovering any incidental or consequential damages, "including loss or damage to their personal property." ***Hence, plaintiffs cannot recover for any damages on their negligence claim*** against defendants (claims one and two).

*Id.* at 402, 499 S.E.2d at 780 (emphasis added).

Thus, *Moore* teaches that a consequential damages exclusion such as the one contained in sections 7(b) and 8(h)(II) of the Pesticide Application Agreement applies with equal force to both contract and negligence claims. *Accord Island Creek Coal*, 832 F.2d at 278 (applying Michigan law and rejecting argument that consequential damages exclusion cannot apply to negligence claims); *Gates Rubber Co. v. USM Corp.*, 508 F.2d 603, 617 (7th Cir. 1975) (consequential damages exclusion applies equally to negligence claim); *LeFebvre Intergraphics, Inc. v. Sanden Machine Ltd.*, 946 F. Supp. 1358, 1373 (N.D. Ill. 1996) (consequential damages exclusion "'would be superfluous if it were read merely as referring to remedies under the express warranty'") (quoting *Gates Rubber*, 508 F.2d at 617); *Proctor & Schwartz*, 802 F. Supp. at 143, 146 ("[t]ort claims premised upon losses caused by fire damage to property other than the product itself are precluded by defendant's contractual exclusion of liability for

18

consequential damages."). Therefore, sections 7(b) and 8(h)(II) of the Contract precluded Plaintiffs from recovering for consequential damages, not only on their breach of contract claim, but on their negligence claims as well.

## III. SUMMARY JUDGMENT ON PLAINTIFFS' NEGLIGENCE CLAIMS SHOULD BE AFFIRMED ON THE ALTERNATE GROUND THAT THESE CLAIMS IMPROPERLY SEEK DAMAGES ARISING FROM DEFENDANTS' CONTRACTUAL PERFORMANCE.

Plaintiffs allege that "[b]y undertaking to use highly toxic and potentially explosive pesticides at [SPC's] storage dome, IFC/Rollins assumed a duty to [SPC] and Meherrin to perform its services in a good, safe and workmanlike manner." (J.A. 41 ¶ 29). They further allege that IFC "assumed a statutory duty to [SPC] and Meherrin to perform its services in compliance with" the Federal Insecticide, Fungicide and Rodenticide Act and the North Carolina Pesticide Law of 1971. (J.A. 42 ¶ 35). They allege that IFC breached these duties in numerous respects. (J.A. 41, 43 at ¶¶ 30, 39). Under long-standing North Carolina law, however, the rights and remedies available to Plaintiffs are governed not by the law of negligence, but rather by the law of contracts.

### A. The Economic Loss Doctrine Precludes a Claim for Negligence Where the Defendant's Obligations are Governed by Contract.

The North Carolina Supreme Court adopted the economic loss doctrine in the case of *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 240 S.E.2d 345 (1978). The court announced the general rule that "[o]rdinarily, a

19

breach of contract does not give rise to a tort action by the promisee against the promisor." *Id.* at 81, 240 S.E.2d at 350.  As this Court has observed, this doctrine makes sense because "'parties to a contract do not thereby become each others' fiduciaries; [therefore], they generally owe no special duty to one another beyond the terms of the contract.'" *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (quoting *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992)).

> "[A] tort action does not lie against a party to a contract who simply fails to perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract.  It is the law of contract and not the law of negligence which defines the obligations and remedies of the parties in such a situation."

*Lord v. Customized Consulting Specialty, Inc.*, 182 N.C. App. 635, 639, 643 S.E.2d 28, 30-31 (2007) (quoting *Spillman v. American Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741-42 (1992) (citations omitted)); *see also Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006) (it is "'unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations'") (quoting *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002)).

Application of the economic loss doctrine is well illustrated by *Warfield v. Hicks*, 91 N.C. App. 1, 370 S.E.2d 689 (1988) and *Land v. Tall House Building Co.*, 165 N.C. App. 880, 602 S.E.2d 1 (2004), each of which arose from the construction of a custom home. In *Warfield*, the builder issued a one-year express warranty and an agreement to complete a punchlist of items requiring completion or repairs. At trial, the plaintiffs introduced evidence that some punchlist items were never completed and that various other defects or problems were discovered during the warranty period which the defendants failed to remedy. *Id.* at 3, 370 S.E.2d at 690. Their evidence included an expert inspection that revealed numerous items that were incomplete, below normal construction standards, or in violation of the building code. *Id.* at 4, 370 S.E.2d at 691.

The defendants appealed from the trial court's denial of their motions for directed verdict and judgment notwithstanding the verdict on the issue of negligence. The Court of Appeals concluded that the plaintiffs' negligence claim was controlled by *Ports Authority* and that "the facts of this case do not support a claim for negligent construction of the house." *Id.* at 9, 370 S.E.2d at 694. It noted that the plaintiffs "have neither alleged nor proven any injury other than the injury to the property itself arising from the contractor's alleged failure to adequately perform its contract or to satisfy express and implied warranties." *Id.* at 10, 370

S.E. at 694.  Consequently, it held that the trial court's submission of a negligence claim to the jury was reversible error.  *Id.*

In *Land*, the plaintiff-homeowners entered into a home construction contract with a builder for a house clad with a Dryvit exterior finish system.  After the plaintiffs moved into their house, they experienced water intrusion and structural defects for which they sued their builder.  Their builder impleaded Dryvit, against whom it asserted a contribution claim.  165 N.C. App. at 881, 883, 602 S.E.2d at 2, 3.  Applying the economic loss doctrine, the Court of Appeals observed that the builder "failed to perform the terms of the contract, and this failure resulted in injury to the subject matter of the contract, the home.  Thus, the law of contract, not the law of negligence, defines the obligations and remedies of the parties."  *Id.* at 883, 602 S.E.2d at 3.  Because the builder could not be liable to the homeowners for negligence, it could not be considered a joint tortfeasor and therefore had no right of contribution against Dryvit.  *Id.*; *see also Ford v. All-Dry of the Carolinas, Inc.*, 2011 N.C. App. LEXIS 713 (N.C. Ct. App. Apr. 19, 2011) (plaintiffs' negligent construction claim barred by economic loss doctrine);  *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 42, 587 S.E.2d 470, 476 (2003) ("we acknowledge no negligence claim where all rights and remedies have been set forth in the contractual relationship"); *Mason v. Yontz*, 102 N.C. App. 817, 818-19,

22

403 S.E.2d 536, 538 (1991) (under *Ports Authority*, improper to allow a homeowner to recover damages for negligent construction of a swimming pool).

The economic loss doctrine applies equally to contracts addressing the application of pesticides. *See Crop Prod. Servs., Inc. v. Ormond*, 2012 U.S. Dist. LEXIS 5499 (E.D.N.C. Jan. 18, 2012) (application of pesticides to crops); *Riggs v. Orkin, Inc.*, 2011 U.S. Dist. LEXIS 62938 (E.D.N.C. June 13, 2011) (application of pesticides to private residence).

### B.    Because IFC's Obligations Were Governed by the Contract, Plaintiffs are Precluded From Suing IFC for Negligence.

The Contract here expressly specifies IFC's obligations to SPC and Plaintiffs' breach of contract claim is grounded on precisely such contractual obligations:

> 42.    The April 20, 2009 contract . . . provides in pertinent part that "IFC agrees to exercise all reasonable and practical efforts to apply the pesticides…. in a manner consistent with instructions, procedures[,] directions, and precautions set forth in the labeling of the pesticide as required by the EPA."

> 43.    Defendants breached the contract with Severn in various ways including but not limited to failing to exercise ["]all reasonable and practical efforts to apply the pesticides…. in a manner consistent with instructions, procedures[,] directions, and precautions set forth in the labeling of the pesticide as required by the EPA."

(J.A. 43 ¶¶ 42-43).  Consequently, this case falls squarely within *Ports Authority* and its progeny.  It is therefore the law of contracts – not the law of negligence –

that provides Plaintiffs the remedies to which they may be entitled. *Lord*, 182 N.C. App. at 639, 643 S.E.2d at 30-31.

Indeed, the rationale for applying the economic loss doctrine against Plaintiffs is particularly strong here because of the Contract's exclusion of consequential damages. (J.A. 46-47 §§ 7(b), 8(h)(II)). That exclusion makes clear that in forming their contractual bargain, these commercial parties consciously allocated risks. The economic loss doctrine "prohibits recovery for purely economic loss in tort when a contract, a warranty, or the UCC operates to allocate risk." *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009). The doctrine "encourages contracting parties to allocate risks for economic loss themselves, because the promisee has the best opportunity to bargain for coverage of that risk or of faulty workmanship by the promisor." *Lord*, 182 N.C. App. at 639, 643 S.E.2d at 30. "To give a party a remedy in tort . . . would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract." *Moore*, 129 N.C. App. at 402, 499 S.E.2d at 780; *see also Ellis*, 699 F.3d at 784-85 (relying on *Moore* in affirming dismissal based on economic loss doctrine); *2000 Watermark Ass'n, Inc. v. Celotex Corp.*, 784 F.2d 1183, 1185-86 (4th Cir. 1986) (because "[c]ontract law permits the parties to negotiate the allocation of risk . . . the majority of courts have required that there be injury to person or property before imposing tort liability.").

The risk-allocation principle inherent in the economic loss doctrine was central to this Court's analysis in *Palmetto Linen Serv., Inc. v. U.N.X., Inc.*, 205 F.3d 126 (4th Cir. 2000) (applying South Carolina law). The plaintiff there operated a commercial laundry business. It entered into a contract with the defendant to install a computerized pump system in the plaintiff's washers to regulate the injection of chemicals the defendant supplied. The system malfunctioned, thereby destroying over $200,000 worth of the plaintiff's linens and the plaintiff asserted a negligence claim against the defendant. The district court granted summary judgment in the defendant's favor. *Id.* at 128. This Court affirmed:

> The destruction of Palmetto's linens was the natural and foreseeable result of a malfunction of the chemical injection system. The other alleged losses were similarly foreseeable. The parties to the contract either contemplated or should have contemplated these dangers in allocating the risk of loss. While we do not downplay the extent of Palmetto's losses, business entities must protect their commercial interests up front through the medium of contract. The economic loss rule dictates that Palmetto cannot now obtain in tort a remedy for which it did not bargain.

*Id.* at 130.

As the Contract here expressly states, the mere $8,604.00 IFC earned for fumigating the storage dome was "not sufficient to warrant IFC assuming any risk of incidental or consequential damages such as [SPC's] property, product, equipment, downtime, or loss of business." (J.A. 47 § 8(h)(II)). The Contract

25

allocated the risk of loss of the peanuts and storage dome, and associated consequential and business losses, to SPC; in exchange, SPC received a much lower price for the fumigation IFC performed. The economic loss doctrine is intended to prevent contracting parties like Plaintiffs from making an end-run around such a contractual bargain and risk allocation. *LRP Hotels of Carolina, LLC v. Westfield Ins. Co.*, 2014 U.S. Dist. LEXIS 154909, *13 (E.D.N.C. Oct. 31, 2014) ("the rule prevents a party from seeking an extra-contractual tort remedy in an attempt to avoid a contract's allocation of risk."). Yet by claiming damages for the destruction of the peanuts and storage dome, and related consequential losses, that is precisely what Plaintiffs attempt here. That attempt is squarely foreclosed by the economic loss doctrine.

### C. **Because the Peanuts and Storage Dome Constituted Property Which was the Subject of the Contract, Their Destruction Constitutes Economic Loss, Rather than Compensable Property Damage.**

In *Ports Authority*, the North Carolina Supreme Court recognized four exceptions to the application of the economic loss doctrine:

(1) injury or damage to "the person or property of someone other than the promisee";

(2) injury or damage to the "property of the promisee other than the property which was the subject of the contract";

(3) injury or damage to the property of the promisee which was the subject of the contract, "the promisor being charged by law, as a matter of public policy, with the duty to use care in the safeguarding

26

of the property from harm, as in the case of a common carrier, an innkeeper or other bailee"; or

(4) where there "was a wilful [sic] injury to or conversion of the property of the promisee[.]"

294 N.C. at 82, 240 S.E.2d at 350-51. These remain the only exceptions recognized by North Carolina's appellate courts to date. *Vigus v. Milton A. Latta & Sons Dairy Farms, Inc.*, 2009 N.C. App. LEXIS 830, *14 (N.C. Ct. App. May 19, 2009) ("our Courts have not found further exceptions subsequent to the economic loss doctrine that was promulgated in [*Ports Authority*].").

Plaintiffs may attempt to argue that damages to the peanuts and/or storage dome should be considered damage to "other property" under the second *Ports Authority* exception, rather than uncompensable "economic loss." Yet the second *Ports Authority* exception permits a contracting party to recover in negligence for its own property damage only for property which was ***not*** "the subject of the contract." *Ports Authority*, 294 N.C. at 82, 240 S.E.2d at 350-51; *see also Lord*, 182 N.C. App. at 639, 643 S.E.2d at 30-31. This exception requires the Court to segregate the promisee's property into two buckets: (1) property which was the subject of the contract (exception does not apply); and (2) property which was

distinct from the subject of the contract (exception applies).[7]  Thus, the Court must determine into which bucket Plaintiffs' peanuts and storage dome belong.

Turning first to the 21 million pounds of peanuts stored in the dome, it strains credulity to suggest that they were distinct from the subject of the Contract. The very purpose of the Contract was for the fumigation ***of the peanuts***, to rid them of the targeted pests.  That purpose is expressly recited in the Contract's preamble, which states that the parties entered into the contract "for the ***treatment of commodities*** and/or space[.]"  (J.A. 46) (emphasis added).  The peanuts therefore constituted property properly classified as "the subject of the contract" and belong in that bucket.

Similarly, both the Contract and Plaintiffs' Amended Complaint establish that the storage dome was not property that was distinct from the subject of the Contract.  Again, the preamble states that the Contract's purpose was "for the ***treatment of*** commodities and/or ***space***[.]"  (*Id.*) (emphasis added).  Section 2 listed the "Peanut Storage Warehouse" as the "AREA[] TO BE TREATED."[8]  (*Id.* § 2).  That is precisely what Plaintiffs allege in their Complaint:  "IFC agreed to

---

[7]    The second exception is triggered not by the nature of the promisor's services, but rather, by the conclusion that the damaged property was not within their scope.

[8]    Similarly, section 7(e) refers to the "facility to be treated," (*id.* § 7(e)), further confirming that the Contract's purpose was not just to treat the peanuts themselves, but also to treat the "space," "area," or "facility" in which they were stored, *i.e.*, the storage dome.

apply fumigant consisting of aluminum phosphide tablets ***within a peanut storage dome***[.]" (J.A. 38 ¶ 11) (emphasis added). They further allege that "IFC inserted approximately 49,000 tablets of Fumitoxin, an aluminum phosphide tablet, ***into the Dome and the Dome was thereafter sealed*** by IFC." (*Id.* ¶ 14) (emphasis added). Indeed, section 6 of the Contract specifically required IFC "to assume responsibility for sealing and preparing the ***building/area*** for treatment." (J.A. 46 § 6). Because IFC had to prepare and seal the storage dome in order to fulfill its contractual obligations, it constituted property properly classified as "the subject of the contract" and belongs in that bucket. Consequently, neither the damage to the peanuts nor to the dome satisfies the second *Ports Authority* exception.

The "other property" envisioned by the second *Ports Authority* exception must be extraneous to the contractual services provided. As an example, the North Carolina Supreme Court in *Ports Authority* cited *Firemen's Mut. Ins. Co. v. High Point Sprinkler Co.*, 266 N.C. 134, 146 S.E.2d 53 (1966). *Ports Authority*, 294 N.C. at 82, 240 S.E.2d at 350. *High Point Sprinkler* involved "merchandise damaged by water as the result of negligence in the installation of a sprinkler system." *Id.* The merchandise stored in the plaintiff's insured's warehouse was wholly unrelated to the defendant's contractual performance and was unrelated to the subject of the contract – installation of a sprinkler system. The merchandise

therefore constituted property "other than the property which was the subject of the contract[.]" *Id.*

Had the fire within SPC's storage dome spread to Plaintiffs' vehicles or other structures, damage to such other property would be recoverable in negligence under the second *Ports Authority* exception, just as the damaged merchandise in *High Point Sprinkler* was, because Plaintiffs' vehicles and other structures were not related to the services IFC contracted to perform. In contrast, the peanuts and storage dome were at the heart of IFC's contractual performance and therefore cannot be considered "other property" for which recovery in negligence may lie. Consequently, "[t]he law of contract, not the law of negligence, defines the obligations and remedies of the parties." *Land*, 165 N.C. App. at 883, 602 S.E.2d at 3; *see also Lord*, 182 N.C. App. at 639, 643 S.E.2d at 30-31; *Dur v. Western Branch Diesel, Inc.*, 2007 U.S. App. LEXIS 16237, *11 (4th Cir. July 9, 2007) (applying Virginia law) ("the damage to the [boat] caused by the fire fell within the scope of the contractual package, and thus, amounted to nothing more than economic loss for which the law of contracts provides Plaintiff the sole remedy"); *McManus v. GMRI, Inc.*, 2012 U.S. Dist. LEXIS 92094, *12 (W.D.N.C. July 3, 2012) (because the defendant's purported negligence related to a commercial structure which was the subject of the lease agreement, economic loss doctrine barred recovery in tort).

## D.    **Plaintiffs' Negligence Per Se Claim is Also Precluded by the Economic Loss Doctrine.**

The economic loss doctrine applies irrespective of whether the plaintiff alleges that the defendant breached a common-law duty of care or one imposed by statute. *See, e.g., Nudelman v. J.A. Booe Bldg. Contr., Inc.*, 2003 N.C. App. LEXIS 509, *6, 14 (N.C. Ct. App. Mar. 4, 2003) (applying economic loss doctrine to dismiss negligence claim premised on allegations that the defendant violated the state building code); *Binder v. Bank of America Corp.*, 2010 U.S. Dist. LEXIS 124208, *9 (N.D. Tex. Nov. 22, 2010) ("economic loss rule bars negligence per se claims"); *Cemex, Inc. v. LMS Contr., Inc.*, 2009 U.S. Dist. LEXIS 89052, *12 (W.D. Ky. Sept. 28, 2009) (under economic loss doctrine, "negligence per se claims meet the same fate as . . . basic negligence claims"); *Spencer v. DHI Mortg. Co., Ltd.*, 642 F. Supp. 2d 1153, 1161-62 (E.D. Cal. 2009) (economic loss doctrine warrants dismissal of both negligence and negligence per se claims); *In re Air Bag Products Liability Litigation*, 7 F. Supp. 2d 792, 802 (E.D. La. 1998) ("economic loss doctrine forecloses plaintiffs from asserting negligence per se and strict liability as theories of recovery in tort."). Consequently, Plaintiffs' negligence per se claim suffers the same fate as their common law negligence claim.

## CONCLUSION

For all of the foregoing reasons, the judgment of the district court should be affirmed.

31

Respectfully submitted this the 27th day of May, 2015.

**POYNER SPRUILL LLP**

By:   s/ Steven B. Epstein

Steven B. Epstein
N.C. State Bar No. 17396
sepstein@poynerspruill.com
Andrew H. Erteschik
N.C. State Bar No. 35269
aerteschik@poynerspruill.com
P.O. Box 1801
Raleigh, NC  27602-1801
Telephone: 919.783.6400
Facsimile:  919.783.1075

**CAMPBELL TRIAL LAWYERS**

By:   s/ William J. Conroy

William J. Conroy
wconroy@campbell-trial-lawyers.com
1205 Westlakes Drive, Suite 330
Berwyn, PA  19312
Telephone: 610.964.6380
Facsimile:  610.964.1981

*Attorneys for Appellees, Industrial
Fumigant Co. and Rollins, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*7,407*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>May 27, 2015</u>               /s/ Steven B. Epstein
                                                       *Counsel for Appellees*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 27th day of May, 2015, I caused this Brief of Appellees be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

James L. Warren, III
Alexandra Markov
D. Scott Murray
CARROLL WARREN & PARKER PLLC
Post Office Box 1005
Jackson, Mississippi  39215
(601) 592-1010

Jay M. Goldstein
Hunter C. Quick
Howard M. Widis
QUICK, WIDIS & NALIBOTSKY, PLLC
2115 Rexford Road, Suite 100
Charlotte, North Carolina  28211
(704) 364-2500

*Counsel for Appellants*

I further certify that on this 27th day of May, 2015, I caused the required copies of the Brief of Appellees to be hand filed with the Clerk of the Court.

/s/ Steven B. Epstein
*Counsel for Appellees*